**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.  09-cv-02433-WJM-KLM

JOEL PRITCHETT,

      Plaintiff,

v.

I-FLOW CORPORATION,

      Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      Plaintiff Joel Pritchett ("Plaintiff" or "Pritchett") alleges that Defendant I-Flow

Corporation[1] ("Defendant" or "I-Flow") committed various torts in the manner in which it

labeled, marketed, and promoted the ON-Q Painbuster medical delivery device.  (ECF

No. 1.)  Before the Court is Defendant's Motion for Summary Judgment ("Motion").

(ECF No. 91.)  For the reason set forth below, the Motion is DENIED.

### I.  LEGAL STANDARD

      Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem

Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

as to a material fact depends upon whether the evidence presents a sufficient

---

[1]  Plaintiff originally named a number of additional defendants in this action.  (ECF No. 1.)  However, all defendants except for I-Flow Corporation were voluntarily dismissed.  (ECF Nos. 52, 53 & 56.)

disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal

Service*, 812 F.2d 621, 623 (10th Cir. 1987).

 A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

The Court must resolve factual ambiguities against the moving party, thus favoring the

right to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522,

1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir.

1987).

## II.  FACTUAL BACKGROUND

 On August 4, 2005, Plaintiff Joel Pritchett underwent arthroscopic surgery on his

right shoulder.  (Compl. ¶ 19.)  Following surgery, Plaintiff's surgeon, Dr. Mark Luker,

prescribed and placed a catheter for an ON-Q PainBuster continuous infusion pump

intra-articularly into Plaintiff's shoulder joint.  (Luker Dep. at 35.)  Plaintiff later developed

post-arthroscopic glenohumeral chondrolysis.  (Compl. ¶ 22.)  This condition has caused

Plaintiff to undergo additional surgeries, including a total shoulder joint replacement.

(Compl. ¶ 24.)

 Defendant I-Flow Corporation first introduced a continuous infusion pump for post-

operative pain in 1998.  (ECF No. 91-2.)  Defendant manufactured and sold the pain

pump used following Plaintiff's surgery.  (Compl. ¶ 25.)  The FDA approved Defendant's

PainBuster device "to provide continuous infusion of a local anesthetic directly into the intraoperative (soft tissue / body cavity) site for post operative pain management."  (*Id*.)

### III.  ANALYSIS

Plaintiff brings the following causes of action in his Complaint: (1) negligence; (2) negligent misrepresentation; (3) fraud; (4) strict product liability—defective design; (5) strict product liability—failure to warn; (6) breach of implied warranty; and (7) breach of express warranty.  (Compl. pp. 9-20.)  Defendant moves for summary judgment on all claims.  (ECF No. 91.)  In his opposition to the Motion, Plaintiff stipulates to the dismissal of his strict product liability—defective design claim, as well as his claims for breach of express and implied warranty.  (ECF No. 95 at 9 n.3.)  Based on Plaintiff's statement, the Court finds that these claims are abandoned.

Therefore, the only claims remaining in this case are: (1) negligence; (2) strict product liability—failure to warn; (3) fraud; and (4) negligent misrepresentation.  The Court will discuss each of these claims in turn below.

### A.  Negligence and Failure to Warn

In Colorado, a plaintiff bringing a negligence claim must show: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury.  *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011, 1015 (Colo. 2006).  The parties do not dispute that, as a medical device manufacturer, Defendant had a duty to properly warn Plaintiff of the known dangers associated with the use of the medical device.  The parties also do not dispute that Plaintiff was harmed.  The only two prongs of the

negligence test that are disputed are whether Defendant breached its duty to warn and whether any negligence on the part of Defendant caused Plaintiff's harm.  The Court will discuss each of these issues below.

      1.   <u>Breach of Duty</u>

      Defendant contends that Plaintiff has failed to show that it breached its duty to Plaintiff.  In Colorado, a manufacturer has a duty to warn of unreasonable dangers when it knows or should have known that such danger could cause injury.  *Halter v. Waco Scaffolding & Equip. Co.*, 797 P.2d 790, 794 (Colo. App. 1990).  Here, Defendant breached its duty if it did not exercise reasonable care in marketing, selling, and labeling its product.  *See Mile High Concrete v. Matz*, 842 P.2d 198, 202 (Colo. 1992). Defendant is held to the standard of care of a reasonably prudent medical device manufacturer under the same or similar circumstances. *See Palmer v. A.H. Robbins, Co., Inc.*, 684 P.2d 187, 210 (Colo. 1984).

      The reasonable care aspect of Plaintiff's negligence claim melds with Plaintiff's strict product liability claim.  To establish liability in a strict liability—failure to warn case, "a plaintiff is required to establish that a product is defective and unreasonably dangerous." *Camacho v. Honda Motor Corp.*, 741 P.2d 1240, 1245 (Colo. 1987).  A product is defective and unreasonably dangerous if a particular risk is "known or knowable in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution." *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1175 (Colo. 1993).  Thus, both Plaintiff's negligence and strict liability—failure to warn claims turn on whether Defendant knew or should have known

4

of the risk of injury to Plaintiff.

Defendant argues that it is entitled to summary judgment on both claims because Plaintiff has not shown that as of August 2005, when Plaintiff's surgery occurred, it knew or should have known of the risk of chondrolysis if its pain pump was used intra-articularly.  (Mot. at 8.)  In support of this argument, Defendant relies primarily on the fact that "not a single publication within the medical or scientific field contained even a *suggestion* that there was a possible association between chondrolysis and the continuous infusion of local anesthetics into the joint."  (Mot. at 8.)  The Court does not agree, and to the contrary finds that there is evidence from which a jury could conclude that Defendant knew or should have known of the risk of harm.  While the medical literature may not have explicitly used the term chondrolysis until after 2005, the first reports about the toxicity of local anesthetics to articular cartilage date back to at least 1985.  (ECF No. 95-22 at 45.)  Additionally, in late 2003, there were presentations by at least two prominent orthopedic surgeons at national medical meetings regarding rapid deterioration of the intra-articular cartilage after arthroscopic shoulder reconstructions.  (ECF No. 95-20 at 4-5.)  On this evidence, the Court concludes that a reasonable juror could find that Defendant should have known of the risk of harm at the time of Plaintiff's surgery.

There is also evidence in the record showing that Defendant knew or should have known that the manner in which it marketed the PainBuster was not reasonable.  When Defendant attempted to add a reference to orthopedic surgery to the PainBuster's indication for use, the FDA denied that request.  (Earhart Dep. at 172.)  The FDA specifically asked Defendant to remove any reference to orthopedic surgery

from their application so that it would be clear that intra-articular sites were not approved.  (Naveau Dep. at 40-41.)  The FDA approved the PainBuster for use in general surgery only.  (*Id*. at 43-44.)  Defendant was informed by the FDA that if it wanted to seek approval for intra-articular use, it needed to "conduct a study related to the safety and effectiveness of th[e] device for intra-articular use" and "identify a medication that can be used in a slow continuous infusion for pain management in the intra-articular site."  (*Id*. at 46.)  Despite this lack of approval, Defendant marketed the device to orthopedic surgeons and recommended that it be used intra-articularly. (Luker Dep. at 14, 35.)

Finally, Defendant received at least one report from a physician linking the intra-articular use of a pain pump to "chondralysis".  (ECF No. 95-15.)  In July 2004, Cheryle Pritchard, a territory manager for Defendant, e-mailed Alan Dine, Defendant's head of clinical research.  (*Id*.)  Pritchard informed Dine that a physician with whom she was working had attended a presentation at the Rochester Mayo Clinic regarding a link between use of a pain pump in the intra-articular space and "a virus that caused chondralysis."  (*Id*.)  As Dine was the head of clinical research, a reasonable juror could find that Defendant had actual knowledge of the risk of the harm that Plaintiff suffered.

In support of its Motion, Defendant relies heavily on *Pavelko v. Breg*, Case No. 09-cv-1461, 2011 WL 782664 (D. Colo. Feb. 27, 2011) in which United States District Court Judge Philip A. Brimmer granted summary judgment to Defendant Breg Inc. in a similar pain pump case.  (Mot. at 11-12.)  Judge Brimmer held that Plaintiff had not shown a dispute of fact as to whether Breg knew or should have known of the risk of harm when its pain pump was used in the shoulder joint.  2011 WL 782664, at *8.  The

Court finds *Pavelko* distinguishable for a number of reasons.

First, the two cases involve different manufacturers that had different issues with the FDA approval process. Judge Brimmer noted that Pavelko had failed to provide expert testimony on the FDA approval process and explicitly rejected Pavelko's attempt to impute I-Flow's actions in the FDA approval process to Breg. *Id*. at *6. Plaintiff here has produced expert testimony regarding the FDA approval process and produced sufficient evidence to create a material fact dispute as to whether I-Flow acted reasonably with respect to marketing and promoting its product in the face of the FDA's action.

Second, Pavelko's surgery occurred in June 2003, before the presentations linking cartilage damage with use of a pain pump occurred. Many courts addressing surgeries in 2005 have held that the pain pump manufacturer knew or should have known of the risk of harm by this time. *See, e.g., Hamilton v. Breg*, 2011 WL 780541 (S.D. Ohio Jan. 20, 2011) (denying summary judgment when surgery occurred in September 2005); *Suhn v. Breg, Inc.*, 2010 WL 5301043 (D.S.D. Dec. 20, 2010) (finding question of what was foreseeable by December 2005 appropriate for the trier of fact).

In general, whether a party acted reasonably under the given circumstances is a question of fact for the jury to determine. *Hesse v. McClintic*, 176 P.3d 759, 765 (Colo. 2008). The Court's role is to determine whether there is a duty and the scope of such duty, but "[t]he finder of fact then must determine whether the defendant breached that duty." *Bath Excavating & Const. Co. v. Willis*, 847 P.2d 1141, 1148 (Colo. 1993).

Considering the totality of the evidence, the Court finds that Plaintiff has shown a genuine dispute of fact as to whether, at the time of Plaintiff's surgery, Defendant knew or should have known that the use of its pain pump in the intra-articular cavity could cause harm.

    2.   <u>Causation</u>

Defendant also argues that Plaintiff has failed to show a dispute of fact as to whether any alleged negligence on its part was the cause of Plaintiff's injury.  (Mot. at 14-15.)  In support of this argument, Defendant refers to its Motion to Exclude Expert Opinions of Dr. Jon Hyman Under Fed. R. Evid. 702.  (ECF No. 106.)  Defendant argues that, if the Court grants its Motion to Exclude, then Plaintiff has no expert testimony linking his injury to Defendant's negligence or failure to warn.  (Mot. at 15.)

On April 17, 2012, U.S. Magistrate Judge Kristen L. Mix held that Dr. Hyman's testimony on causation was admissible and denied Defendant's Motion to Exclude. (ECF No. 128.)  As the lack of expert testimony is the only basis for summary judgment asserted by Defendant with respect to the element of causation, and Judge Mix has ruled that Plaintiff's expert testimony is admissible, the Court finds that the issue of causation is not appropriate for summary disposition.  Dr. Hyman's opinion is sufficient to create a genuine issue of fact as to whether Plaintiff's injuries were caused by Defendant's actions.

Because Plaintiff has shown a genuine dispute of fact as to elements of both his negligence and strict liability—failure to warn claims, the Court denies Defendant's Motion for Summary Judgment in this respect.

**B.      Promotion of PainBuster Device**

Defendant moves for summary judgment on any claim that Defendant wrongfully

promoted the PainBuster for intra-articular use.  (Mot. at 15-16.)  Defendant contends

that there is no private right of action for enforcement of FDA rules and regulations.  (*Id.*

at 15.)  Plaintiff contends that he is not asserting a private right of action related to any

alleged violation of the FDA regulations; rather, Plaintiff contends that whether Defendant

followed FDA regulations and how Defendant responded to the FDA's comments made

during the approval process is relevant to his negligence claim.  (Opp. at 15.)

In Colorado, noncompliance with a government code, standard, or regulation

creates a rebuttable presumption that a product was defective or negligently

manufactured.  Colo. Rev. Stat. § 13-21-403(2).  Additionally, whether Defendant

complied with federal regulations is a factor that the jury could consider in determining

whether Defendant acted within the standard of care of a reasonably prudent medical

device manufacturer. *See Palmer v. A.H. Robbins, Co., Inc.*, 684 P.2d 187, 210 (Colo.

1984).

Because the question of whether Defendant complied with federal regulations is

relevant to Plaintiff's negligence claim, the Court does not agree that Plaintiff is

attempting to assert a private right of action for violation of FDA standards.

Accordingly, Defendant's Motion for Summary Judgment is denied in this respect as

well.

**C.      Fraud and Negligent Misrepresentation**

An essential element of both Plaintiff's fraud and negligent misrepresentation

claims is that Plaintiff (or his physician) reasonably relied on false information provided by Defendant.  *See Mehaffy, Rider, Wndholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 236 (Colo. 1995).  Defendant contends that Plaintiff cannot point to any evidence that it made affirmative misstatements to Dr. Luker.  (Mot. at 15.)

Although, at his deposition, Dr. Luker could not recall specific conversations with any representative of Defendant, he testified that he read the materials for the pain pump provided by Defendant and met with a representative for Defendant more than once. (Luker Dep. at 14, 35.)  Despite these conversations, Dr. Luker testified that he had no knowledge of an association between intra-articular use of a pain pump and chondrolysis.  (*Id*. at 91.)  On this evidence, a reasonable jury could conclude that Defendant made false statements or had omitted information that it knew or should have known.

Defendant also contends that Plaintiff has not shown that Dr. Luker relied on any statement or omission by Defendant.  (Reply at 14.)  However, Dr. Luker testified that he would not have used the PainBuster without having read the directions for use prepared by Defendant.  (Luker Dep. at 35.)  While this evidence is minimal, it suffices to meet Plaintiff's burden on summary judgment.  Plaintiff has shown that there is a genuine dispute of fact as to whether Defendant made misrepresentations or omissions that were relied upon by Dr. Luker in connection with his decision to use the PainBuster in Plaintiff's shoulder following his 2005 surgery.  As such, Defendant's Motion for Summary Judgment is denied with respect to Plaintiff's fraud and negligent misrepresentation claims.

## IV.  CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

1.     Defendant's Motion for Summary Judgment (ECF No. 91) is DENIED;

2.     This case shall proceed to trial on the following claims: (1) negligence; (2) strict liability—failure to warn; (3) fraud; and (4) negligent misrepresentation; and

3.     All other claims are abandoned by Plaintiff.

Dated this 18th day of April, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge